Dueker, Judge:
Claimant, Charles Henry Cephas, alleges that on December 4, 1941, he entered the West Virginia State Penitentiary at Moundsville to serve a life sentence for a felony conviction and that on October 14, 1966 he was released on parole from his imprisonment; that on December 5, 1966 he was admitted to Mountain State Hospital in Charleston for treatment of leg injuries diagnosed as thrombo-phlebitis where operations were performed and that he is still under the care of the doctor who so performed such operations; that said ailment has existed since he was first incarcerated in the penitentiary, and that the penitentiary officials wilfully and negligently failed and refused to provide claimant with adequate and proper medical treatment, resulting in the permanent disability of claimant and his inability to engage in any gainful employment, thus damaging him in the sum of $50,000.00, $1,000.00 of which is for hospital and medical expense.
The evidence consists of claimant’s own testimony, the penitentiary hospital records from 1947 to date of claimant’s release, and the testimony of the former warden of the penitentiary. No evidence of a medical nature other than the said penitentiary hospital records. The State penitentiary hospital records from 1941 to 1947 as to claimant were unobtainable, as it appears that such records could not be found. The claimant testified that in the latter part of 1940 while he was working on the W.P.A. as a driller near Beckley a drill bit broke and “tore up” his legs, and that his legs were still swollen when he was taken to the penitentiary in December, 1941, being placed in the hospital there for three months. He admitted he *150 received much treatment in the penitentiary from time to time and the records confirm that fact, but he says it was not adequate or proper.
The sole question at issue is whether the medical treatment afforded or not afforded claimant was the cause of claimant’s suffering and condition. As to this the proof lies only in the claimant’s own testimony. The cause originated it seems from the accident which occurred before his incarceration. Although about seven years of hospital records have been unobtainable, it hardly seems reasonable to assume they would show anything helpful to the claimant in proving his claim anymore than do the records which were obtained and introduced in evidence. The doctors who were employed by the State to render medical service to the inmates, including claimant, are not living, but the evidence shows they were respectable and qualified, and with no evidence to the effect that their treatment of the claimant was not proper or negligent it is difficult to believe otherwise, especially when there is no convincing proof of complaints during such time. The records are full of instances of the application of hot compresses and ultraviolet rays and zinc oxide ointment treatment to claimant’s leg, penicillin shots, boric acid and warm and hot saline soakings of his leg. The records disclose many occasions on which claimant was a patient in the hospital for ailments other than those affecting his legs. On February 2, 1959 a report shows that claimant had “vericose veins on both legs for which he has been treated for quite some time, that this condition persists due to the fact that Cephas has not tried to do what has been prescribed for him.” Except to say he has not been cured, claimant offered no proof to the effect that he would now be cured except for the negligence or improper treatment by the medical staff at the penitentiary hospital. We cannot assume it to be a fact that claimant could have been cured of his leg ailment.
We are not unmindful of the difficulty of patients to procure evidence to support claims of malpractice against physicians, but much more than has been offered in testimony in this regard is necessary to convince this Court that there has been any mistreatment or maltreatment of the claimant by the penitentiary hospital staff. The claimant is certainly no expert capable of *151 testifying as to what was or was not the proper treatment in his case, even though he may still be afflicted with the disease. It seems, too, that during the approximately twenty-five years of his incarceration he would have some independent proof as to negligent or improper treatment. Furthermore, it was his duty, if he was to wait this long before asserting his claim, to have made some reasonable effort to get assistance from someone in or out of the penitentiary to substantiate the allegations which he now makes. Although this case is primarily based upon the theory of being a continuing trespass, the long delay and the death of the doctors capable of testifying have destroyed much of the credibility which would otherwise apply to claimant’s testimony.
Preponderance of evidence means sufficient evidence of such quality as to prevail, which in this case is to overcome the facts appearing to the contrary in the hospital records. Howsoever much the claimant believes the hospital staff was negligent or wilful in their treatment of him, such belief, even if accompanied by pain, does not constitute competent evidence to establish the allegations of the claim. We are of the opinion that claimant has not borne the burden of proving his case by a preponderance of the evidence, and conclude that he is not entitled to any compensation in this matter, and, accordingly, we do not make any award to him herein.
Claim Disallowed.